**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | |
|---|---|
| CHRISTINA COMBS | CIVIL ACTION NO. 25-2044 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| DIG CREATIVE SOLUTIONS, ET AL. | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before the Court is Defendant Digital Imaging Group, LLC's ("DIG") Motion to Dismiss Plaintiff's First Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(3), and 12(b)(6). See Record Document 12. Plaintiff Christina Combs ("Combs") opposed the Motion. See Record Document 14. DIG filed a reply. See Record Document 17.

## FACTUAL BACKGROUND

According to the First Amended Complaint, Combs began working for DIG in September 2020 as a graphic designer and was promoted to Lead Graphic Designer in September 2022. See Record Document 11 at ¶ 11. DIG is alleged to be a Mississippi corporation domiciled in Flowood, Mississippi. See id. at ¶ 2.

Combs alleges that she became pregnant in December 2022 and informed DIG of her pregnancy in late February 2023. See id. at ¶ 12. Shortly thereafter, DIG's Chief Executive Operating Officer Mitch Wolverton ("Wolverton") allegedly informed Combs that she was being demoted, yelled at her during a meeting, and threatened her employment. See id. Combs was later told that she would remain at the same pay rate and was permitted to work remotely. See id.

In July 2023, Combs relocated to Bossier City, Louisiana, after her husband accepted employment in Shreveport. See id. at ¶ 13. She alleges that DIG approved her continued remote employment from Louisiana, where she worked with DIG's Louisiana customers through the date of her termination in January 2025. See id. DIG has allegedly performed numerous projects for Louisiana customers and routinely sends employees into Louisiana “to view facilities, facilitate design plans, enter into contracts and send installers to Louisiana to install Defendant’s work product.” Id. at ¶¶ 8-9.

Following the birth of Combs’s first child in August 2023, Combs took eight weeks maternity leave and leave under the Family Medical and Leave Act. See id. at ¶ 14. After, she continued to work remotely for DIG. See id. In March 2024, Combs was allegedly advised that she needed to slow her pace of work because she worked "just too blasted fast." Id. at ¶ 15.

On October 10, 2024, Combs informed her supervisor that she was pregnant with her second child. See id. at ¶ 16. Approximately three weeks later, she attended a meeting with DIG management during which she was advised that she was still working “too fast” and was placed on a Performance Improvement Plan. Id. She was also presented with options to continue working as a full-time employee, transition to part-time, or become an independent contractor. See id. Combs alleges that she immediately complained that these actions constituted pregnancy discrimination. See id.

Combs alleges that she received an email in December 2024 thanking her for remedying the identified performance concerns. See id. at ¶ 17. Nevertheless, DIG terminated her employment on January 8, 2025. See id. at ¶ 18. Combs contends that

the stated reasons for her termination were false and merely pretext for pregnancy discrimination and retaliation for her complaints of discrimination. See id.

Combs filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on September 10, 2025, 245 days after the date she was notified of her termination. See id. at ¶ 19. She alleges that although the EEOC concluded that the charge was untimely, Louisiana's 300-day filing period applied because she resided and worked in Louisiana and because DIG employed more than 25 employees within Louisiana during the relevant period. See id. at ¶¶ 20–21. After receiving a Notice of Right to Sue, Combs filed this action asserting claims under Title VII, the Pregnancy Discrimination Act ("PDA"), and Louisiana Revised Statutes 23:341–342. See id. at 1.

DIG filed the instant Motion to Dismiss (Record Document 12) arguing a lack of personal jurisdiction under Rule 12(b)(2), improper venue under Rule 12(b)(3), and that Combs has failed to state a claim under Rule 12(b)(6).

## LAW AND ANALYSIS

### I. Applicable Standards

A motion pursuant to Rule 12(b)(2) allows a party to move to dismiss for lack of personal jurisdiction. See Fed. R. Civ. P. 12(b)(2). "Where a defendant challenges personal jurisdiction, the party seeking to invoke the power of the court bears the burden of proving that jurisdiction exists." Luv N'Care, Ltd. v. Insta-Mix, Inc., 438 F.3d 465, 469 (5th Cir. 2006) (citing Wyatt v. Laplan, 686 F.2d 276, 280 (5th Cir. 1982)). When a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, the plaintiff need only make a prima facie showing of personal jurisdiction. See Rd. Sprinkler Fitters Local Union No. 669, U.A., AFL-CIO v. CCR Fire Prot., LLC, Civil

Action No. 16-448-JWD-EWD, 2018 WL 3076743, at *4 (M.D. La. June 21, 2018). "Moreover, on a motion to dismiss for lack of jurisdiction, uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a prima facie case for personal jurisdiction exists." Bullion v. Gillespie, 895 F.2d 213, 217 (5th Cir. 1990) (quoting D.J. Investments, Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc., 754 F.2d 542, 546 (5th Cir. 1985)).

II. Analysis

Under Fifth Circuit precedent, personal jurisdiction exists if (1) the state's long-arm statute extends to the defendant, and (2) the exercise of such jurisdiction is consistent with due process. See Johnston v. Multidata Sys. Int'l Corp., 523 F.3d 602, 609 (5th Cir. 2008). The Louisiana long arm statute extends to the full extent allowed by due process. See Patin v. Thoroughbred Power Boats Inc., 294 F.3d 640 (5th Cir. 2002). The exercise of personal jurisdiction comports with due process when "(1) the defendant has purposefully availed himself of the benefits and protection of Louisiana by establishing 'minimum contacts' with Louisiana, and (2) the exercise of personal jurisdiction over the defendant does not offend traditional notions of fair play and substantial justice." Raphiel v. Haley Residential Inc., 2023 WL 1806828, at *2 (W.D. La., 2023) (citing Allred v. Moore & Peterson, 117 F.3d 278, 285 (5th Cir. 1997)).

When determining whether a defendant has the requisite minimum contacts with the forum, a defendant may be subjected to general or specific jurisdiction. See Ford v. Mentor Worldwide, LLC, 2 F. Supp. 3d 898, 903 (E.D. La. 2014). General jurisdiction applies when the defendant's contacts with the forum are "continuous and systematic,"

even when the cause of action has no relation to those contacts. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414–16 (1984). "The Fifth Circuit has characterized the 'continuous and systematic contacts' test as a 'difficult one to meet.'" Ford, 2 F. Supp. 3d at 903 (citing Johnston v. Multidata Sys. Int'l Corp., 523 F.3d 602, 609 (5th Cir. 2008)). "[E]ven repeated contacts with forum residents by a foreign defendant may not constitute the requisite substantial, continuous and systematic contacts required for a finding of general jurisdiction." Johnston, 523 F.3d at 609 (quoting Revell v. Lidov, 317 F.3d 467, 471 (5th Cir. 2002)). Typically, a corporation is subject to general jurisdiction in the place of incorporation and the place it is headquartered. See Daimler A.G. v. Bauman, 571 U.S. 117, 137, 139 (2014). Here, Combs does not assert that Louisiana has general jurisdiction over DIG. See Record Document 16 at 14. Rather, Combs argues that DIG is subject to specific jurisdiction. See id.

Specific jurisdiction applies when a nonresident defendant "has 'purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities.'" Panda Brandywine Corp. v. Potomac Elec. Power Co., 253 F.3d 865, 868 (5th Cir. 2001) (quoting Alpine View Co. v. Atlas Copco A.B., 205 F.3d 208, 215 (5th Cir. 2000)). "The non-resident's 'purposeful availment' must be such that the defendant 'should reasonably anticipate being haled into court' in the forum state." Ruston Gas Turbines Inc. v. Donaldson Co., 9 F.3d 415, 419 (5th Cir. 1993) (quoting World–Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S. Ct. 580 (1980)). The Fifth Circuit's three-step analysis for specific jurisdiction is as follows:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the

> defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

Seiferth v. Helicopteros Atuneros, Inc., 472 F.3d 266, 271 (5th Cir. 2006) (citations omitted).

Here, the Court recognizes two distinct categories of contacts alleged in the First Amended Complaint. First, Combs alleges that DIG has repeatedly conducted business within Louisiana for several years by designing, producing, and installing graphics and signage for several Louisiana customers throughout the state. See Record Document 11 at ¶ 8. She further alleges that DIG routinely sends employees into Louisiana to meet with customers, facilitate design plans, negotiate contracts, and perform installations. See id. at ¶ 9. Accepting these allegations as true, the Court concludes that DIG purposefully availed itself of the privilege of conducting business within Louisiana and could reasonably anticipate being haled into court here for claims arising from those activities.

However, those contacts bear little apparent relationship to the underlying controversy. This action concerns whether DIG discriminated against Combs based upon her pregnancy and retaliated against her for opposing that discrimination. As presently alleged, nothing indicates that DIG's Louisiana customers or its Louisiana commercial activities played any role in the challenged employment decisions. Accordingly, this first category of contacts appears insufficient to satisfy the requirement that Combs's claims arise out of or relate to DIG's forum contacts.

The second category of contacts consists of DIG's employment relationship with Combs after she relocated to Louisiana. Combs alleges that DIG approved her relocation, permitted her to continue working remotely from Bossier City for approximately eighteen

months, and ultimately discriminated against and terminated her while she resided in Louisiana. See Record Document 11 at ¶ 13.

Standing alone, these allegations likewise present difficulties. In Embry v. Hibbard Inshore, L.L.C., the Fifth Circuit rejected personal jurisdiction under similar circumstances, holding that an employer's awareness that an employee relocated to Louisiana and continued working remotely from Louisiana did not constitute purposeful direction of activities toward Louisiana. See 803 F. App'x 746, 748-49 (5th Cir. 2020) (unpublished). The Fifth Circuit emphasized that the defendant had no contacts with Louisiana other than permitting the employee to continue working remotely from the forum and reiterated that the jurisdictional inquiry focuses on the defendant's contacts with the forum, not the plaintiff's unilateral decision to reside there. See id. (citing Walden v. Fiore, 571 U.S. 277, 285 (2014) (stating that the "plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him."). The Court is hesitant to blindly apply Embry to the present case because DIG clearly has more Louisiana based contacts than the defendant in Embry.

Conversely, in Anderson v. Dominion Fin. Services, LLC, a district court within the Fifth Circuit found that a Maryland LLC was subject to personal jurisdiction in a Texas employment action because it hired a Texas resident to work remotely in Texas and utilized that employee to service Texas customers. No. 2:23-CV-00195-JRG, 2023 WL 5723654, at *4 (E.D. Tex. Sept. 5, 2023). Here, by contrast, Combs relocated to Louisiana more than two years after her employment began, and she only alleges that DIG permitted her to continue working remotely following that relocation.

Accordingly, the present record reflects two distinct categories of contacts. The first category (DIG's Louisiana commercial activities) appears sufficient to satisfy the purposeful availment requirement but lacks the necessary relationship to the employment discrimination claims asserted in this action. The second category (DIG's continued employment of Combs while she resided in Louisiana) bears a closer relationship to the underlying claims but, under Embry, appears insufficient by itself to establish purposeful availment. The only allegation connecting these two categories of contacts is Combs's assertion that relocating to Louisiana allowed her to work more closely with DIG's Louisiana customers and that servicing those customers formed part of her employment duties. See Record Document 11 at ¶¶ 9, 13.

The Court cannot make an informed ruling without further exploration into the link explained above. If Combs's relocation materially altered her employment responsibilities such that she became substantially involved in DIG's Louisiana operations (for example, by regularly meeting with Louisiana customers, assuming primary responsibility for Louisiana accounts, generating substantial Louisiana revenue, or otherwise becoming integrated into DIG's Louisiana business activities) that evidence could materially affect the Court's jurisdictional analysis. As presently pleaded, the First Amended Complaint provides no factual detail explaining what working more closely with Louisiana customers actually entailed.

Recognizing this deficiency, the Court **GRANTS** Combs's alternative request for jurisdictional discovery rather than dismissal. See Record Document 16 at 15. The Fifth Circuit has recognized that limited jurisdictional discovery may be appropriate where the plaintiff has identified a potentially viable basis for personal jurisdiction but the existing

record is insufficient to resolve the issue. See Fielding v. Hubert Burda Media, Inc., 415 F.3d 419, 429 (5th Cir. 2005). Under the unique circumstances presented here, the Court concludes that additional discovery is warranted.

Accordingly, the parties shall have forty-five (45) days to conduct discovery limited to the issue of personal jurisdiction. Within fourteen (14) days following the close of that discovery period, Combs shall file a supplemental memorandum addressing whether the additional evidence establishes that her claims arise out of or relate to DIG's Louisiana contacts. DIG may file a supplemental response within seven (7) days thereafter. The Court holds the Motion in abeyance at this time.

III. Exhaustion of Administrative Remedies

Although the Court declines to address the remaining arguments at this time, a cursory review of the Motion indicates that the exhaustion issue turns on a factual dispute that may be resolved through limited discovery. DIG argues that Combs's EEOC charge was untimely because DIG did not employ the requisite number of Louisiana employees necessary to invoke the extended filing period under Louisiana law. See Record Document 12-1 at 22–24. Combs's First Amended Complaint states that "[u]pon information and belief, Defendant employs more than twenty-five employees within this state for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." Record Document 11 at ¶ 21.

The Court finds that this bare allegation, which merely tracks the statutory language, is insufficient to meaningfully resolve the issue presently before the Court. Whether DIG employed the requisite number of Louisiana employees during the relevant statutory period is ultimately a factual question. In the interest of judicial economy, the

Court will permit limited discovery on this issue so that it may be addressed in the parties' supplemental briefing.

**CONCLUSION**

Based on the reasons explained above, the Court **DEFERS** ruling on DIG's Motion to Dismiss pending the completion of limited discovery. The parties shall have until October 2, 2026, to conduct discovery limited to the issue of personal jurisdiction. No later than October 16, 2026, Combs shall file a supplemental memorandum in opposition addressing whether the additional evidence establishes that her claims arise out of or relate to DIG's Louisiana contacts. DIG may file a supplemental reply no later than October 23, 2026. The parties shall also conduct discovery concerning the number of Louisiana employees employed by DIG during the relevant period and address that issue in the supplemental briefing.

A separate order shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 14th day of August, 2026.

JUDGE S. MAURICE HICKS, JR.
UNITED STATES DISTRICT COURT